IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 13, 2014

IN RE GARVIN M. ET AL.

**Appeal from the Juvenile Court for Sevier County**
**Nos. 13-000287 & 13-000288     Jeffrey D. Rader, Judge**

---

**No. E2013-02080-COA-R3-PT-FILED-MAY 9, 2014**

---

This is a termination of parental rights case, focusing on Garvin M. and Brianna M., the minor children ("the Children") of Ryan M. ("Father") and Jennifer M. ("Mother"). In July 2012, the Children were taken into protective custody by the Tennessee Department of Children's Services ("DCS") and placed in foster care. DCS filed a petition to terminate the parental rights of Mother and Father on February 26, 2013. The petition alleged as statutory grounds for termination: (1) severe child abuse, (2) abandonment by the parents' failure to provide a suitable home, (3) substantial noncompliance with the permanency plan, (4) persistent conditions, and (5) abandonment by an incarcerated parent who exhibits wanton disregard for the Children's welfare prior to incarceration.[1] Following a bench trial, the trial court granted the petition as to both parents upon finding that DCS had proven all of the grounds alleged by clear and convincing evidence. The court also found, by clear and convincing evidence, that termination of Mother's and Father's parental rights was in the Children's best interest. Father has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Ryan M.

Robert E. Cooper, Jr., Attorney General and Reporter, and Jordan Scott, Assistant Attorney

---

[1] The ground of abandonment by an incarcerated parent exhibiting wanton disregard for the Children's welfare prior to incarceration was only alleged against Father.

General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

Robert L. Huddleston, Maryville, Tennessee, Guardian Ad Litem.

**OPINION**

I. Factual and Procedural Background

Father is a parent of two minor children who are the focus of this proceeding: Garvin M., now age three, and Brianna M., now age six. The Children were removed from the home of Father and Mother on July 24, 2012, following the death of a sibling. On July 23, 2012, Mother gave birth to a baby girl, Corran M., who died the following day. The baby's death was the result of pulmonary hypertension, caused in part by hemorrhagic leukoencephalitis. The autopsy report revealed areas of bilateral subarachnoid hemorrhage in Corran's brain, as well as lesions that a medical expert, Dr. Miriam Weinstein, explained were consistent with Corran having suffered a "fairly sizeable stroke" in utero. The medical records demonstrated that Mother was using cocaine and other illicit drugs during her pregnancy. Dr. Weinstein testified within a reasonable degree of medical certainty that Mother's drug use resulted in Corran's stroke and that such circumstance would have been reasonably expected to cause death. Dr. Weinstein explained that the child's extremely small size at birth was also consistent with Mother's use of drugs while pregnant.

DCS petitioned for and obtained temporary custody of the Children on July 26, 2012, and the Children were adjudicated dependent and neglected on October 24, 2012. A permanency plan was created on August 6, 2012, and ratified by the court on October 24, 2012. The plan required, *inter alia*, that the parents:

> (1) Refrain from illegal drug use, take prescribed medicine as prescribed, and drink alcohol responsibly;
> (2) Complete an alcohol and drug assessment and follow all recommendations;
> (3) Submit to random drug screens and provide DCS with a weekly work schedule;
> (4) Resolve all legal issues and not incur any new charges (Father);
> (5) Complete a parenting assessment, provide DCS with documentation of completion, and follow all recommendations of that assessment;
> (6) Attend parenting classes and apply learned techniques during visits;
> (7) Obtain and maintain stable housing, reliable transportation, and a legal source of income; and
> (8) Complete a mental health assessment and follow all recommendations.

While the Children were in custody, Father failed multiple drug screens. He incurred at least five additional criminal charges, all of which related to drugs. Father never completed an alcohol and drug assessment. Father was eventually ordered into a drug treatment program by the general sessions court as a condition of his probation, and he was still enrolled in that program at the time of the termination of parental rights trial. Father did not complete a parenting assessment or a mental health assessment, and he did not maintain stable housing or a lawful source of income. In fact, Father was intermittently incarcerated for most of the relevant time frame.

DCS filed a petition seeking termination of Mother's and Father's parental rights on February 26, 2013. As previously noted, the grounds alleged for termination were (1) severe child abuse, (2) abandonment by failure to provide a suitable home, (3) substantial noncompliance with the permanency plan, (4) persistent conditions, and (5) abandonment by an incarcerated parent who exhibits wanton disregard for the Children's welfare prior to incarceration. Following a bench trial, the trial court found that all grounds alleged against each parent were proven by clear and convincing evidence. The court also found clear and convincing evidence that termination was in the Children's best interest. The trial court therefore terminated the parental rights of both Mother and Father. While Mother did not appeal the trial court's ruling, Father has timely appealed to this Court.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by finding clear and convincing evidence of severe child abuse by Father.

2.      Whether the trial court erred by finding clear and convincing evidence that Father abandoned the Children by failing to provide a suitable home.

3.      Whether the trial court erred by finding clear and convincing evidence that Father failed to substantially comply with the requirements of the permanency plan.

4.      Whether the trial court erred by finding clear and convincing evidence that the conditions leading to the Children's removal still persisted.

5.      Whether the trial court erred by finding clear and convincing evidence that Father abandoned the Children by engaging in conduct exhibiting

a wanton disregard for their welfare prior to his incarceration.

6. Whether the trial court erred by finding clear and convincing evidence that termination of Father's parental rights was in the Children's best interest.

### III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36-1-113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at

546; *State Dep't of Children's Servs. v. Mims (In re N.B.)*, 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Severe Child Abuse

The trial court terminated Father's parental rights, *inter alia*, on the statutory ground that he committed severe child abuse. Tennessee Code Annotated § 36-1-113(g)(4) (Supp. 2013), as relevant to this action, provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> * * *
>
> > (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian . . . .

Tennessee Code Annotated § 37-1-102(b)(23) (Supp. 2013) defines "severe child abuse," in relevant part, as:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death . . . .

As this Court has previously explained:

> a parent's conduct is "knowing, and a parent acts or fails to act 'knowingly,' when . . . [he] has actual knowledge of the relevant facts and circumstances or when . . . [he] is either in deliberate ignorance of or in reckless disregard of the

information that has been presented to . . . [him]."

*In re H.L.F.*, 297 S.W.3d 223, 236 (Tenn. Ct. App. 2009) (quoting *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122 at *6 (Tenn. Ct. App. July 13, 2004)).

The trial court made the following factual findings with regard to severe child abuse:

> That Respondent, Jennifer [M.], did commit severe abuse on these children's sibling, C.J.M. in that she exposed that child to drugs *in utero*. That child died following her birth. The proof is clear from the medical records and from the testimony of Dr. Miriam Weinstein that that child suffered a stroke as a result of that drug use. Although that stroke may not have been the direct cause of the child's death, it is certainly a severe injury that rises to the level of severe abuse and it very likely occurred because of the mother's drug use. There is evidence of numerous drug use by the mother up until the time the child was born. As it relates to the father, there is evidence that he knowingly failed to protect this child, C.J.M. from the abuse or neglect that was likely to cause (and did cause) serious bodily injury. The specifics of this statute are borne out by the proof. It is indicated to this court and the Court believes that the father not only failed to protect but that he allowed the mother to use these drugs and promoted that drug use which occurred. The mother and father have a toxic relationship and he clearly knew that she was utilizing these drugs at the time she was pregnant. He took no action whatsoever to stop it. **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(4) and 37-1-102(b)(23) have been met;** . . . .

(Emphasis in original.)

Father contends that evidence regarding severe child abuse against Corran may not serve as the basis for a severe child abuse finding as grounds for terminating his parental rights to his other Children. Father cites the case of *In re Nirvanna S.*, No. E2010-01358-COA-R3JV, 2011 WL 684196 at *9 (Tenn. Ct. App. Feb. 28, 2011), in support of this assertion. In *Nirvanna*, this Court determined that there was "no statutory authority that would allow a child who was not subjected to conduct constituting 'severe child abuse' to be deemed a severely abused child based on abuse perpetrated against a sibling" in a dependency and neglect proceeding. *Id.* The statute governing the standard for a finding of severe child abuse in a termination of parental rights proceeding, however, specifically provides that when a parent has "committed severe child abuse against the child who is the subject of the petition *or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian*," that parent's

-6-

rights may be terminated. Tenn. Code Ann. § 36-1-113(g)(4) (emphasis added). Therefore, this Court's above-quoted holding in *Nirvanna* is inapplicable to a termination proceeding.

As this Court has previously explained, there are numerous cases holding that a mother's use of drugs while pregnant can constitute severe child abuse. *See In re B.A.C.,* 317 S.W.3d 718, 725 (Tenn. Ct. App. 2009); *In re Benjamin M.*, 310 S.W.3d 844, 848 (Tenn. Ct. App. 2009); *Cornelius v. State, Dep't. of Children's Servs.*, 314 S.W.3d 902, 910 (Tenn. Ct. App. 2009); *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174 at *5 (Tenn. Ct. App. July 16, 2013); *In re Joshua E.R.*, No. W2011-02127-COA-R3-PT, 2012 WL 1691620 at *3 (Tenn. Ct. App. May 15, 2012); *In re M.J.J.*, No. M2004-02759-COA-R3-PT, 2005 WL 873305 at *8 (Tenn. Ct. App. April 14, 2005). In each of these cases, this Court determined that the mother was guilty of severe child abuse, pursuant to Tennessee Code Annotated § 37-1-102(b)(23), for illicit drug use during pregnancy. The medical proof in this case demonstrated that Corran suffered a serious bodily injury as a result of Mother's illicit drug use.

*In re Joshua* also stands for the proposition that a father may have his parental rights terminated based on the ground of severe child abuse for failing to take action to protect an unborn child from illicit drug use by the Mother during pregnancy. *See* 2012 WL 1691620 at *6. In *In re Joshua*, there was evidence that the father had used illicit drugs with the mother during her pregnancy and that he was obviously aware that she was using drugs while pregnant. *Id.* There was also testimony that the father had supplied drugs to the mother during her pregnancy. *Id.* This Court therefore affirmed the termination of the father's parental rights based on the ground of severe child abuse. *Id.*

Similarly, in the instant action, Father admitted that he and Mother used drugs together while she was pregnant, including marijuana, narcotics, and painkillers. Father denied having knowledge that Mother was using cocaine, even though the paramedic who arrived to transport Mother to the hospital when she was in labor testified that Father and Mother were found lying on a mattress covered with a white powder, which substance Father attempted to conceal. The paramedic also related that he observed a white powder substance on the kitchen counter with cut straws next to it. Further, Mother tested positive for cocaine, marijuana, benzodiazepines, and opiates during prenatal visits.

Father admitted that he supplied drugs to Mother for her use during pregnancy. Father also admitted that he knew Mother would go, accompanied by Brianna, to a nearby Wal-Mart parking lot and panhandle to obtain drug money while she was pregnant. As Father explained, drug use was "very prevailing" in the home he shared with Mother.

As stated previously, Tennessee Code Annotated § 37-1-102(b)(23) defines "severe

child abuse," *inter alia*, as:

> (A)(i) The knowing exposure of a child to *or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death* and the knowing use of force on a child that is likely to cause serious bodily injury or death . . . .

(Emphasis added). The evidence in this case clearly demonstrated that Father knowingly provided Mother with illicit drugs and knew of her use of such drugs during her pregnancy. The medical evidence further demonstrated that Mother's drug use resulted in serious bodily injury to Corran. As such, we conclude that the trial court properly found clear and convincing evidence that Father had committed severe child abuse against Corran. The trial court did not err in terminating Father's parental rights to the Children based upon this ground, pursuant to the plain language of the statute.

### V. Abandonment by Failure to Provide a Suitable Home

The trial court also determined that Father had abandoned the Children by failing to establish a suitable home. Tennessee Code Annotated § 36-1-113(g)(1) provides, as an additional statutory ground for termination:

> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . . .

Tennessee Code Annotated § 36-1-102(1)(A) (2010) defines abandonment, in relevant part, as:

> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child

to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department; . . . .

In its final order, the trial court included the following specific findings regarding Father's failure to establish a suitable home:

> Ryan [M.] and Jennifer [M.] willfully failed to provide a suitable home for the children. The mother's current whereabouts are unknown; there is no showing that she has anywhere to live. Father is currently in a rehab facility where the children cannot reside. The Court finds that the Department made reasonable efforts on this matter. **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(1) and 36-1-102(1)(A)(ii) have been met for abandonment for failure to provide a suitable home**[FN] . . . .
>
> [FN] The Court also notes that the parents have had very little personal contact with the children since January 2013 and neither has paid any child support. Although the statutory definition for Abandonment for failure to visit and failure to support are not met (because of the four-month requirement), it is clear that the parents have abandoned these children in that they have not visited nor supported.

(Emphasis in original.)

Father argues that the trial court failed to consider that he had a suitable home prior to his incarceration. While Father's assertion is questionable given his testimony regarding the prevalent drug use occurring in the home, it is undisputed that Father had no suitable home for the Children at the time of the termination hearing. Father was incarcerated for a majority of the time during which the Children were in protective custody. His release from jail was conditioned upon his participation in a court-ordered, residential drug rehabilitation program. At the time of the termination hearing, Father had participated in that program for approximately one-third of the required nine-month residency period. Father maintained no other home, and there was no dispute that the Children could not reside with him at the treatment facility.

The proof demonstrated, and Father does not challenge, that DCS made reasonable efforts to assist Father in establishing a suitable home for the Children. As previously stated,

Father was incarcerated for the greater part of the protective custody period, which limited DCS's ability to assist him. Father failed drug screens administered by DCS, incurred numerous drug-related criminal charges, and failed to follow through with any of the suggested action steps listed in the permanency plan. Father candidly admitted at trial that he "didn't do very much" to try and regain custody of the Children from July 2012, when the Children were placed in protective custody, to April 2013, when Father entered the treatment program. As a result, Father could provide no suitable home for the Children at the time of the termination hearing. We conclude that the trial court properly found clear and convincing evidence in support of this statutory ground.

### VI. Substantial Noncompliance with Permanency Plan

The trial court, *inter alia,* terminated Father's parental rights on the statutory ground that he failed to substantially comply with the reasonable responsibilities set out in his permanency plan. Tennessee Code Annotated § 36-1-113(g)(2) provides, as relevant to this action:

> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4.

As this Court has previously explained:

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance.

*In re M.J.B. & M.W.S., Jr.*, 140 S.W.3d 643, 656-57 (Tenn. Ct. App. 2004) (internal citations omitted).

With regard to substantial noncompliance with the permanency plan, the trial court found:

That Respondents, Jennifer [M.] and Ryan [M.], have failed to comply in a substantial manner with those reasonable responsibilities set out in the foster care plans related to remedying the conditions which necessitate foster care placement. . . . Although the father has made some efforts – after the Department filed a Petition to Terminate Parental Rights, father has not obtained stable housing, he has not completed treatment; he has not completed the most important requirements of the plan. As has already been noted, the Department made reasonable efforts to assist these parents. **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(2) and 37-2-403(a)(2) have been met . . . .**

(Emphasis in original.)

The permanency plan at issue in this case was developed on August 6, 2012, and was signed by Father on that date. The plan was ratified by the court on October 24, 2012. This plan required that Father would:

(1) Refrain from illegal drug use, take prescribed medicine as prescribed, and drink alcohol responsibly;
(2) Complete an alcohol and drug assessment and follow all recommendations;
(3) Submit to random drug screens and provide DCS with a weekly work schedule;
(4) Resolve all legal issues and not incur any new charges;
(5) Complete a parenting assessment, provide DCS with documentation of completion, and follow all recommendations of that assessment;
(6) Attend parenting classes and apply learned techniques during visits;
(7) Obtain and maintain stable housing, reliable transportation, and a legal source of income; and
(8) Complete a mental health assessment and follow all recommendations.

The proof is undisputed that Father did not refrain from illegal drug use, which resulted in Father failing several drug screens and incurring numerous additional criminal charges. Furthermore, Father did not complete an alcohol and drug assessment. Father did not complete a parenting assessment, and while he did provide proof of attending parenting classes, the caseworker testified that those classes were completed at a time before the Children were placed in protective custody. Father did not obtain and maintain stable housing, transportation, or a source of income. Finally, Father did not complete a mental health assessment. As noted above, Father admitted at trial that he "didn't do very much" to regain custody of the Children. We conclude that the evidence does not preponderate against the trial court's determination, by clear and convincing evidence, that Father was in

substantial noncompliance with the permanency plan.

## VII. Persistent Conditions

Tennessee Code Annotated § 36-1-113(g)(3) provides the following as an alternative ground for termination of parental rights:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

By its order terminating Father's parental rights, the trial court, *inter alia*, found:

There is a persistence of conditions in this case in that, as the Court has already noted, the parents have not been able to provide a suitable home for the children, and they have not resolved their drug addictions/abuse at the time of the filing of the petition or even by the time of trial. The Court notes for the record that at the time this petition was filed the parents were in possession of drugs based on the testimony of a witness today. In September, 2012, the parents were found to be in possession of drug paraphernalia in their car. The father has picked up numerous drug charges. The mother has charges still pending it appears. They have continued to fail drug screens and the father was placed by this Court (sitting in General Sessions) in rehab after a stay in jail. For the reasons already stated, the Court finds that the Department made reasonable efforts to assist the parents in remedying the conditions which led to removal. **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(3) have been met . . . .**

-12-

(Emphasis in original.)

Having carefully considered the evidence in this case, we conclude that these findings are supported by a preponderance of the evidence. These Children were removed from the home of the parents for a period exceeding six months. Father's drug addiction concerns and legal problems stemming from his criminal charges still persisted at the time of trial. Father was identified as an intravenous drug user who had struggled with this issue for years, as evinced by Brianna's reporting that she frequently witnessed her parents using drugs. While it is true that Father was participating in court-ordered drug rehabilitation at the time of the termination hearing, he lacked several months in completing that treatment.

Brianna also reported sexual abuse by male friends of Father who came to her home to use drugs. Brianna's therapist testified that Brianna reported the abuse to her parents, who were inside the home sleeping when the abuse occurred. In response, the parents merely told her to stay away from the men. The therapist further explained that Brianna had begun to describe abuse by Father but then discontinued her disclosure. This therapist, having also counseled Garvin, opined that both Children manifested signs of sexual abuse.

Furthermore, as the trial court found, despite Father's protestations to the contrary, there was no basis for the court to conclude that Father would stay away from Mother upon his release from the treatment program. According to Father, Mother was his "downfall" and the reason that he could not stop his use of drugs. Although he described their relationship as "toxic," Father was still involved with Mother until the date of his latest incarceration. As the trial court found, the parents were "inseparable" throughout the DCS proceedings.

Following a thorough review of the record in this case, we conclude that the evidence preponderates in favor of the trial court's finding, by clear and convincing evidence, that the conditions leading to removal of the Children still persisted. Further, there were other conditions that would, in all reasonable probability, cause the Children to be subjected to further abuse or neglect if returned to Father. The evidence in this cause demonstrates that the conditions leading to removal had not been remedied and were unlikely to be remedied at an early date. Moreover, there is no question that continuation of the parent and child relationship greatly diminishes the Children's chances of early integration into a safe, stable, and permanent home. The trial court properly terminated Father's parental rights based upon this statutory ground as well.

VIII. Abandonment by Exhibiting Wanton Disregard Prior to Incarceration

Tennessee Code Annotated § 36-1-102(1)(A) also defines abandonment, in relevant

-13-

part, as:

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, **or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child**;
> . . . .

(Emphasis added.) Regarding the ground of abandonment by wanton disregard, the statute does not limit the parent's conduct to any particular four-month period prior to incarceration. *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005).

Although the statute does not define "wanton disregard," this Court has previously explained the purpose behind this statutory section as follows:

> Tenn. Code Ann. § 36-1-102(1)(A)(iv) also reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child. Incarceration severely compromises a parent's ability to perform his or her parental duties. A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child. However, parental incarceration is not an infallible predictor of parental unfitness. Accordingly, Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s second test for abandonment does not make incarceration alone a ground for the termination of parental rights. An incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child. Thus, the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

*In re Audrey S.*, 182 S.W.3d at 866 (internal citations omitted). As the Court further explained, "We have repeatedly held that probation violations, repeated incarceration,

criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 868.

Regarding this statutory ground, the trial court found in its final decree, *inter alia*:

That at the time of the filing of the Department's petition, the father, Ryan [M.], was incarcerated in the Sevier County Jail in Sevierville [], Tennessee. His incarceration serves only as the triggering event; the Court has considered the father's continued exposure to drugs, continued criminal activity, descriptions by the children of the use of intravenous drugs. **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(1) and 36-1-102(1)(A)(iv) have been met . . . .**

(Emphasis in original.)

The evidence preponderates in favor of the trial court's findings. Father's frequent periods of incarceration related to his use of illicit drugs is part of a broader pattern of conduct showing his wanton disregard for the welfare of the Children. Father has, for an extended period of time, abused drugs such as marijuana and narcotics, and his drug abuse has placed his Children in danger. The Children have reported, and Father has admitted, neglect while they were in his care. The Children have also reported incidents of abuse. Father's drug use with Mother contributed to the death of the Children's sibling. Despite that tragedy, Father continued to abuse drugs and incur additional criminal charges, resulting in his repeated incarceration. Father knew that he had Children in the protective custody of DCS, but as the trial court found, "his focus has been on himself rather than on the children."

After the Children were placed in protective custody but prior to his most recent incarceration in February 2013, Father incurred five new drug-related criminal charges. He pled guilty to each one. Father failed three random drug screens administered by DCS and failed to submit to others. Father, by his own admission, did very little to regain custody of his Children. Father's placement in the drug treatment program at the time of trial was ordered by the general sessions court as a condition of his probation. We conclude, after a thorough review of the record, that Father's pre-incarceration behavior exhibited wanton disregard for the welfare of his Children. The trial court properly determined that there was clear and convincing evidence to support this statutory ground as well.

IX. Best Interest of Children

Finally, Father contends that the trial court erred in finding clear and convincing

evidence that termination of his parental rights was in the Children's best interest. When a parent has been found to be unfit by establishment of a statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In determining that termination of Father's parental rights was in the best interest of the Children, the trial court stated:

This is not a difficult case for the court. The Court takes no joy in this decision but notes the following: Mother has abandoned the children in her failure to visit or to support. She is not even present on the trial date. She has done nothing which would allow the Court to in any way find that she would be allowed to continue as the children's mother. The Court believes that the mother and father have been inseparable throughout the proceedings in Juvenile Court. It would not be a long stretch to believe that the mother and father would be involved together again. Father has also failed to provide support and lacks the ability to provide any kind of home to the children at any time in the near future. Pretty much everything he has done up to this point, from the point the children were placed into custody would indicate that his focus has been on himself rather than on the children.

The Court agrees with a statement made by the Guardian Ad Litem in closing that all or almost all of the factors in 36-1-113(i) are met in this case. **By clear and convincing evidence, and pursuant to Tenn. Code § 36-1-113(i), the Court finds that it is in the best interest of the children to terminate Jennifer [M.]'s and Ryan [M.]'s parental rights.**

(Emphasis in original.)

-17-

A thorough review of the record and proper consideration of the applicable statutory factors lead this Court to the same conclusion regarding best interest. Father has made no adjustment of his circumstances or conduct such that it would be safe and in the Children's best interest to be with him. Father is residing at a drug treatment facility and has no home in which the Children could live. At the time of trial, Father had only been in treatment for about three months. Father had, however, abused drugs for years. Until he was ordered by the court to participate in drug treatment, Father exhibited no effort to change the course of his life. Based on his lack of effort, lasting adjustment does not appear to be reasonably possible.

Father had participated in some visitation with the Children, although it was suspended at one point because the parents showed Brianna a picture of her dead sibling. The case worker characterized the incident as a very traumatic event for Brianna. There was no proof that Father shared a meaningful relationship with the Children. Regarding this factor, the therapist testified that the Children, when discussing the parents, referred to the parents by their first names and exhibited a great deal of anger toward them.

A change of caretakers at this point would be detrimental to the Children emotionally and psychologically due to the Children's reported anger and resentment toward Father. Father asserts that the Children are not thriving in foster care, as evinced by the fact that the Children had experienced multiple home placements. The case worker explained, however, that DCS had now found a placement that should be ideal for the Children, as it was a "veteran" foster family, experienced in caring for children with emotional or behavioral issues. She also testified that this family was open to the idea of adopting the Children.

In addition, there were allegations that Father had sexually abused Brianna and that he had failed to protect her from sexual abuse by others. As Father maintained no home, there was no showing that his home was healthy and safe. There was a dearth of evidence regarding Father's mental or emotional status, although his continuing drug and criminal activity would certainly present concerns as to whether he could provide safe and stable care. Finally, Father admitted that he had never paid support for the Children.

After a thorough review of the record, we conclude that there was clear and convincing evidence that it was in the best interest of the Children to terminate Father's parental rights. We therefore affirm the trial court in its termination of the parental rights of Father to the Children.

## X.  Conclusion

The judgment of the trial court terminating the parental rights of Father is affirmed.

-18-

Costs on appeal are taxed to appellant, Ryan M.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE